**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CLEVE BRADFORD | ) | |
| | ) | |
| Plaintiff, | ) | No. 16 C 8112 |
| | ) | |
| v. | ) | District Judge Jorge L. Alonso |
| | ) | |
| | ) | Magistrate Judge Jeffrey Cummings |
| GHALIAH OBAISI, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Cleve Bradford ("Bradford"), an inmate at the Western Illinois Correctional Center, brought this action against Saleh Obaisi, M.D., F.A. Craig, D.D.S., J.F. Mitchell, D.D.S., and Wexford Health Sources, Inc. ("Wexford") under the Eighth and Fourteenth Amendments.[1] Bradford alleges that defendants subjected him to cruel and unusual punishment through their deliberate indifference to his tooth and jaw pain that eventually necessitated oral surgery. (Dckt. 115). Currently before the Court is defendants' motion to compel Bradford to pay fees associated with the March 8, 2019 deposition of defendants' expert Dr. Michael Sullivan. Defendants' motion (Dckt. 182) is denied for the reasons discussed below.

### I.  BACKGROUND

Bradford filed a handwritten complaint on August 15, 2016 while he was housed at the Stateville Correctional Center in Joliet, Illinois. Bradford alleged that he submitted a medical request form on December 11, 2014 related to severe pain that he was experiencing in his jaw and gums. Dental x-rays were not taken until January 5, 2015, when it was determined that

---

[1] Both Dr. Obaisi and Dr. Craig died after this case was filed. Dr. Obaisi has been substituted by Ghaliah Obaisi as the independent executor of his estate. (Dckt. 95). Dr. Craig was substituted by Shirley Craig as the special representative of his estate. (Dckt. 131).

1

Bradford needed to have his lower left wisdom tooth removed. Dr. Craig – a dentist retained by defendant Wexford – eventually extracted the tooth on February 10, 2015. (Dckt. 1). In his Third Amended Complaint, Bradford alleges that he was not given any pain medication prior to the extraction date and that Dr. Craig improperly left the root tip from the tooth to "work itself out on its own" over time. (Dckt. 115 at ¶ 21). Bradford alleges that he was only given ineffective over-the-counter pain medication by Dr. Craig and by defendant Dr. Mitchell on February 17, 2015. (*Id*. at ¶ 29). On February 26, 2015, Bradford was referred to a dentist not employed by Wexford who put him under anesthesia and surgically removed the problematic root tip. (*Id*. at ¶ 32).

At the same time that Bradford filed his *pro se* complaint, he also submitted an application to proceed *in forma pauperis*. The application states that Bradford received $10 a month from the correctional center where he was located, had no income, and currently had $12.64 in his prison trust account. (Dckt. 3). Bradford also asked the District Court to appoint counsel to represent him in this matter. (Dckt. 4). On August 22, 2016, the District Court granted the *in forma pauperis* application and granted Bradford's motion to appoint counsel. (Dckt. 5).

On March 3, 2017, the parties submitted a joint discovery plan requiring defendants to disclose their expert witness by February 28, 2018 and for Bradford to depose the expert by March 20, 2018. (Dckt. 45). Defendants named Dr. Michael Sullivan – a dentist who practices in Elmhurst, Illinois – as their witness on December 7, 2018. Bradford named Dr. Don Sauter as his expert. (Dckt. 187 at Ex. 1). Defendants deposed Dr. Sauter on November 2, 2018, and Bradford deposed Dr. Sullivan on March 8, 2019. (*Id*. at p. 3). Bradford "covered the fees and

2

costs relating to [Dr.] Sauter's deposition, which totaled $3,530.00." (*Id.*).[2] Dr. Sullivan submitted an invoice for his fees in the amount of $3,746.23. The fees accounted for 3.5 hours of deposition time at the rate of $650 an hour; 2.5 hours of preparation time at the rate of $550 an hour; and miscellaneous parking and mailing fees. (Dckt. 182 at Ex. 1). Defendants forwarded Dr. Sullivan's invoice to Bradford on April 18, 2019. On June 21, 2019, Bradford's counsel sent an email to defendants stating that Bradford would not pay Dr. Sullivan's fee because doing so would result in "manifest injustice" under Rule 26(b)(4)(E). (Dckt. 182 at Ex. 3). On July 19, 2019, defendants brought this action to compel Bradford to pay Dr. Sullivan's fees.

## II.    LEGAL STANDARD

A party that seeks discovery from an opposing party's expert witness is ordinarily required to pay the expert for the time that he or she spends in responding to the request. Federal Rule of Civil Procedure 26(b)(4)(E) provides:

> Unless manifest injustice would result, the court must require that the party seeking discovery: (i) pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (D); and (ii) for discovery under (D), also pay the other party a fair portion of the fees and expenses it reasonably incurred in obtaining the expert's facts and opinions.

"The language of the rule is mandatory," *Se-Kure Controls, Inc. v. Vanguard Prods. Group*, 873 F.Supp.2d 939, 952 (N.D.Ill 2012), unless a court finds that enforcing the fee requirements of Rule 26(b)(4)(E) would result in manifest injustice. It is not entirely clear, however, what manifest injustice means in this context. On the one hand, the exception to the mandatory fee provision of Rule 26(b)(4)(E) involves a "stringent standard." *Reed v. Binder*, 165 F.R.D. 424, 427 (D.N.J. 1996). On the other hand, what that standard includes has not always been evident

---

[2] Plaintiff's counsel does not explain how the fees and costs for Dr. Sauter's deposition were "covered." The Court presumes that plaintiff's counsel - - who were appointed by the Court - - bore the costs of these expenses as required by Local Rule 83.40.

3

because the "case law interpretation of this provision is sparse." *Harris v. San Jose Mercury News, Inc.*, 235 F.R.D. 471, 473 (N.D.Cal. 2006); *see also See Delgado v. Sweeney*, No. Civ. A 01-3092, 2004 WL 228962, at *1 (E.D.Pa. Jan. 6, 2004) ("Unfortunately, there is no clear definition of 'manifest injustice.'"). That said, most courts have found that manifest injustice exists under Rule 26(b)(4)(E) either when (1) a plaintiff is indigent or (2) requiring the plaintiff to pay an expert's fee would create an undue hardship. *See*, *e.g.*, *Edin v. The Paul Revere Life Ins. Co.*, 188 F.R.D. 543, 547 (D.Ariz. 1999); *see also Harris*, 235 F.R.D. at 473.

### III. DISCUSSION

**A. Requiring Bradford to pay defendants' expert costs would result in manifest injustice because Bradford is indigent**

Bradford asserts that requiring him to pay for Dr. Sullivan's deposition costs would result in "manifest injustice" because he is indigent and he points to his *in forma pauperis* application, which states that he had only $12.64 in his inmate trust account, to support his argument. (Dckt. 187 at p. 2). Such a paltry sum clearly suggests impoverishment but courts have been hesitant to equate poverty with indigency under all circumstances. *See United States v. Shepherd*, 922 F.3d 753, 758 (6th Cir. 2019) (stating that the fact that a litigant is poor "does not tell us much" about the person in question). Moreover, a person is not automatically indigent for Rule 26(b)(4)(E) purposes merely because he or she is unable to pay an expert's fee. *See Harris*, 235 F.R.D. at 473 (distinguishing between "indigency" and "insolvency" under Rule 26(b)(4)(E) when a party's debts and expenses exceed his limited income).

Bradford also points out that the District Court appointed counsel for him because he could not afford to hire an attorney. The Court recognizes the economic straights that the District Court's decision suggests. Nevertheless, indigence in the context of granting counsel to a *pro se* litigant is not necessarily the same as it pertains to Rule 26(b)(4)(E). *See Hardy v.*

*United States*, 375 U.S. 277, 289 n.7 (1964) (noting that indigence "must be conceived as a relative concept" that is measured by the situation in which it is asserted) (Goldberg, J., concurring). Two separate but related timeframes are involved in these different legal contexts. Appointing counsel is based on the protection of a party's interest by considering the litigant's financial condition at the time the court makes its decision. "In granting court-appointed counsel, the court assesses a defendant's *immediate* ability to pay because 'any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him.'" *United States v. Kelley*, 861 F.3d 790, 800 (8th Cir. 2017) (quoting *Gideon v. Wainwright*, 372 U.S. 355, 344 (1963)) (emphasis added). By contrast, indigence in other contexts includes a future-looking question of whether the party will be able to pay a fee now *or* at some later point. A party who cannot pay to depose an opposing party's expert at the time of the deposition may have the ability to do so in the near future. Consequently, "[t]he ordinary meaning of 'indigent' therefore includes both someone who is poor today and someone who lacks the means to earn the necessaries of life in the future." *United States v. Graves*, 908 F.3d 137, 141 (5th Cir. 2018); *see also Rivera v. City of Chicago*, 469 F.3d 631, 635 (7th Cir. 2006) (stating that indigence must account for a party's future ability to pay fees under Rule 54(d)).

The Court adopts this broader definition of indigence for the purpose of Rule 26(b)(4)(E) and finds that Bradford clearly qualifies as indigent under it. The only financial information the Court has derives from Bradford's August 15, 2016 *in forma pauperis* application that contains transaction statements from the Graham Correctional Center for the period from March 16, 2016 through August 1, 2016. These documents show that Bradford received five money transfers to his inmate trust fund during that period via Western Union in amounts ranging from $100 to $70. Adjusted for commissary expenses, postage, and other payments, Bradford's inmate account

5

contained only $12.64 as of August 1, 2016. (Dckt. 3). No evidence suggests that it has increased since that time. Moreover, Bradford is currently incarcerated and relies entirely on others for his needs. *See Shepherd*, 922 F.3d at 758 (stating that indigency "summons the thought of one who earns no paycheck at all and instead relies on others for life's basic necessities"). Although neither party has informed the Court about the length of his sentence, the Court takes judicial notice of the Illinois Department of Corrections' website, which indicates that Bradford has a "projected parole date" of December 12, 2039. *See* https://www.idoc.state.il.us/subsections/search/inms_print.asp?idoc=S11552 ; *B v. Duff,* No. 06 C 4912, 2009 WL 2147936, at *14 n.12 (N.D.Ill. July 17, 2009) (taking judicial notice of data from the Illinois Department of Corrections' website); *Hampton v. Sabie,* 891 F.Supp.2d 1014, 1016 (N.D.Ill. 2012) (same). The Court therefore finds that Bradford - - who has only $12.64 in funds and no prospect of future income for at least twenty years - - is indigent for the purpose of Rule 26(b)(4)(E) and that requiring him to pay deposition costs of $3,746.23 would result in manifest injustice.[3]

## B. Defendants have failed to show that it was unreasonable for Bradford to take Dr. Sullivan's deposition

Notwithstanding Bradford's indigency (which defendants do not dispute), defendants assert that there would be no manifest injustice if Bradford were required to pay for the deposition for two reasons. First, defendants assert that because Bradford voluntarily chose to take Dr. Sullivan's deposition and it was arguably unnecessary to do so. (Dckt. 182, at 2-3).

---

[3] Given that Bradford is indigent, the Court further finds that Bradford would experience an undue hardship if he were required to pay the costs of Dr. Sullivan's deposition. The Court notes that even a non-indigent party can experience an undue hardship sufficient to relieve them of the obligation to pay expert costs. *See Harris,* 235 F.R.D. at 473-74 (finding that it would be an "undue hardship" to require plaintiff to pay the costs of two defense experts' depositions even though plaintiff had "not demonstrated that he [wa]s indigent in the conventional sense").

6

While it is true that Bradford voluntarily took Dr. Sullivan's deposition, defendants have not established that it was unreasonable or unnecessary for him to do so. The fact that Dr. Sullivan's report was "highly detailed" and lengthy (*Id.,* at 3), does not in itself dispense with Bradford's need to depose him. After all, defendants took the deposition of Bradford's expert and they do not assert that they only did so because his report was vague or somehow unclear. Nor does the fact that Bradford has his own expert render it unnecessary to depose Dr. Sullivan. Although both experts opined on the same issues, they presumably issued differing opinions as to those issues and the disposition of this case could very well turn on the experts' testimony.[4] Given this, the Court finds that it would have been arguably unreasonable for Bradford *not* to take Dr. Sullivan's deposition given that he had the wherewithal to do so with his appointed counsel.[5]

Second, defendants claim that it would be manifestly unjust if Bradford were not required to pay the costs of Dr. Sullivan's deposition because plaintiff's counsel did not inform defendants beforehand that Bradford did not intend to reimburse them for the costs. [Dckt. 182 at p. 4]. The Court disagrees. It is difficult to understand why defendants would have been surprised by Bradford's refusal to pay when they knew from the start of this litigation that he is an inmate at the Western Illinois Correction Center who is proceeding *in forma pauperis* and could not afford counsel. Moreover, defendants knew that Bradford "covered" his own expert's

---

[4] That Court notes that defendants submitted Dr. Sullivan's report and heavily relied upon Dr. Sullivan's opinions in support of their motions for summary judgment. [Dckt. 151-6; Dckt. 156, at ¶¶62-74].

[5] The Court further finds that the two decisions defendants rely upon are either inapposite or actually support Bradford's position. In the first case, the court ordered defendants to pay their own expert deposition fees because the case presented "one of those rare situations where manifest injustice would result if the[] impoverished plaintiffs had to pay" for the deposition costs and, alternatively, as a sanction under Federal Rule of Civil Procedure 37(c)(1) because defendants submitted inadequate expert reports. *Reed,* 165 F.R.D. at 428-31. In the second case, the court held that a *non-indigent* plaintiff would experience an undue hardship if required he were required to pay the costs of deposing two defense experts who covered different subjects than his own expert addressed but that he would not suffer undue hardship if financial considerations caused him to forego taking the depositions of other defense experts who submitted detailed reports on topics covered by his own expert. *Harris,* 235 F.R.D. at 473-74.

7

fee when defendants deposed him on November 2, 2018.  Bradford could have sought fees from defendants under Rule 26(b)(4)(E) for the deposition, yet he did not do so.  Given this (as well as Bradford's meager financial resources), defendants should not have assumed that Bradford would pay Dr. Sullivan's fee and thereby cover the costs for *both* his and defendants' expert depositions.

**C.     Defendants have failed to establish that Dr. Sullivan's deposition costs are reasonable**

Even if Bradford had failed to establish that he is indigent, there is an additional reason why defendants' motion would be denied.  Rule 26(b)(4)(E) requires that any expert fee that falls within its provision must be "reasonable."  To determine what constitutes a reasonable fee, courts consider:

> (1) the expert's area of expertise; (2) the education and training required to provide the expert insight that is sought; (3) the prevailing rates of other comparably respected available experts; (4) the nature, quality, and complexity of the discovery responses provided; (5) the fee actually being charged to the party that retained the expert; (6) fees traditionally charged by the expert on related matters; and (7) any other factor likely to be of assistance to the court in balancing the interests implicated by Rule 26.

*Se-Kure Controls*, 873 F.Supp.2d at 955 (citing cases).  "The party seeking reimbursement of their expert witness fees has the burden of demonstrating to the court that the expert's rate and fee are reasonable."  *Se-Kure Contorls*, 873 F.Supp.2d at 955 (citing *Royal Maccabees Life Ins. Co. v. Malachinski*, No. 96-6135, 2001 WL 290308, at *16 (N.D.Ill. Mar. 20, 2001)).  Here, defendants have failed to even allege - - let alone establish - - that Dr. Sullivan's deposition fees are reasonable.  Nor have defendants offered any of the contextual information such as detailed in the *Se-Kure Controls, supra,* from which the Court could use its discretion to determine a

"reasonable" fee for Dr. Sullivan. Consequently, the Court denies defendants' motion for this reason as well.[6]

## CONCLUSION

For all for all of the above reasons, defendants' motion to compel payment of expert fees pursuant to Federal Rule of Civil Procedure 26(b)(4)(E) [182], is hereby denied.

**Hon. Jeffrey Cummings**
**United States Magistrate Judge**

**Dated: September 3, 2019**

---

[6] To be clear, the Court makes no finding one way or the other as to whether Dr. Sullivan's fee is reasonable. Defendants have failed to provide the Court with sufficient information to make this determination.